J. B. HUDSON ET AL. v. J. H. JURNIGAN ET AL.

1. One-third of a land certificate was sold in 1842, by order of a probate court, to defray the expense of surveying and patenting the other two-thirds. The heirs who had gone into possession of the land thus secured brought suit in 1871 against the purchasers of the land covered by the one-third of the certificate thus sold, and who had been in possession for thirteen years. *Held,* that the claim of the heirs was stale, and they were estopped from attacking the jurisdiction of the probate court which made the order of sale.

2. There is no restriction on the equitable jurisdiction of probate courts over minors and the estates of deceased persons except that imposed by positive statute.

3. Statutes authorizing executors and administrators to sell land should be liberally construed.
4. Probate courts have a jurisdiction in all cases over the estates of intestates, and any one acting on the faith of the judicial acts of such courts will be protected.

APPEAL from Tarrant. Tried below before the Hon. Hardin Hart.

The opinion states the facts.

*J. W. Ferris*, for appellants, contended, (1) that Lee's heirs having received two-thirds of the certificate located and patented by the administrator through the sale of the remaining one-third, and having appropriated the same to their own use, were estopped from setting up any claim to the land in controversy, after the lapse of twenty-nine years, and valuable interests had accrued under said ·sale, of which they were presumed to have had notice, citing Bartlett v. Cocke, 15 Texas, 479 ; and (2) that the court erred in refusing to permit Hudson *et al.* to prove that they were·possessors in good faith, citing Paschal's Digest, Article 5300; Dorn v. Dunham, 24 Texas, 379 ; ·Burdett v. Silsbee, 15 Texas, 620.

*Smith & Jarvis*, for appellees.—1. In matters of probate the civil code of Louisiana was, at the time of granting letters ·of administration, in force in Texas, and if the administration was not prolonged by the court, and a new bond given, the appointment would cease to confer any authority at the expiration of one year from the date of the letters. (Flores v. Howth, 5 Texas, 331 ; Boyle v. Forbes, 9 Texas, 40 ; Easterling v. Blythe, ·7 Texas, 213; Jones v. Perkins, 8 Texas, 339 ; Chandler v. Hudson, 11 Texas, 37 ; Murphy v. Menard, 14 Texas, 66.)

It is claimed that McClure was appointed administrator *de bonis non* in November, 1840, .more than two years and six months after the grants of letters to Andrews.

There had been no order prolonging the administration, nor new bond given as required (Civil Code, Arts. 1197, 1199), and we insist the presumption is conclusive that the estate was fully administered and vested in the heirs, unless there did exist, in fact, some necessity for the appointment of an administrator *de bonis non.* There did exist no necessity, nor was any shown therefor. (9 Texas, 40.) The succession was not vacant, as was alleged in McClure's petition, but the estate had in fact—as was the presumption of law—vested in the heirs. There were no debts to be collected nor creditors to be satisfied. But it is insisted that under the act of fifth of February, 1840 (Hartley, Art. 1042), the judges of probate were required to cause all executors, administrators, etc., to whom letters had been granted twelve months previous to the passage of the act, to appear before them, account for their proceedings, and settle. This requirement could only be predicated of a valid and subsisting administration, and cannot be held to confer on the courts authority to make a void administration valid, or to reopen one that was already closed by granting letters of administration *de bonis non.* It could not apply to administration granted more than twelve months prior to the passage of the law, which had not, at the expiration of the first year, been extended by the judge granting a prolongation and requiring a new bond.

It could not apply to a case like the present where letters had been granted two years and six months previous, and which could only be of force by having been twice prolonged by the judge, and filing new bond each time. It is not pretended that anything of the sort was ever done in this estate. In the case of Easterling v. Blythe this court says of an administration pending in 1838: "The period of his administration was fixed by law at one year, and in the absence of any evidence to the con-

tráry, it would be presumed to have terminated at the end of that period. The legal presumption therefore is, that the administration had long since been closed, the liabilities of the estate extinguished, and the title or estate of the ancestor in the land, whatever it may have been, fully and absolutely vested in the heirs." (7 Texas, 213; 11 Texas, 37.)

The act of the court revoking the letters of Andrews was needless, because they had long since expired by the limitation of law. (Murphy v. Menard, 14 Texas, 66.)

McClure was a land locator at the time, as he testifies; he thought he had found a "vacant succession of the probable value of $1500, as he was informed," in the shape of a league and labor land certificate. He was not a creditor, nor did he know of any creditors of the estate; there being none, the estate had fully vested in the heirs, the administration must be regarded as closed, and no legal administrator *de bonis non* could be required, and ought not to have been granted, and his appointment gave him no right of action, but was an absolute nullity. (Id., 67.)

2. If the court properly exercised its authority in granting letters *de bonis non* to McClure, was its jurisdiction rightly invoked in ordering the sale of the certificate? The power of a court to do a thing, and the rightful exercise of that power, are very different. The probate court had power to grant letters of administration on the estates of deceased persons, but for their orders and decrees to be binding the court must legally and rightfully exercise that power. Just so with courts ordering the sale of the property of decedents' estates—the authority to order the sale must be legally exercised. The powers of our county courts in respect to estates of decedents are all conferred by statute, and whatever the statute authorizes the court to do it may rightfully do.

(27 Texas, 495.)   The converse of this is true, that so far as they assume to do what the statute does not authorize, their orders are nullities.   Under the act of February 5, 1840, in force when McClure claimed to have made this sale, the probate court could order the sale of land on two grounds, and only two :

1.   Under the 29th Section (Hart. Dig., Art. 1023), to pay debts.

3.   Under the 42d Section of said act (Hart. Dig., Art. 1036), for partition under the provisions of said section.

But it does not follow because the statute authorizes the court to order the sale of land for these causes, that all sales of land by order of the court are authorized. The county courts were not clothed with a general power to order the sale of land or land certificates for any other cause.   And if the court orders a sale of land where the circumstances do not exist which under the law authorizes it to do so, it acts in doing so without jurisdiction, or in other words without authority.   (Withers v. Patterson, 27 Texas, 495, 501.)

In the case at bar it appears from the record that there were no debts against the estate, no costs of administration were due from the estate, when McClure claims to have been appointed administrator *de bonis non.*   The record showed none.   He and Andrews both testified virtually that there were none.   The costs incurred and the fees claimed by McClure were incurred in his own wrong, and were not debts against the estate of Abner Lee. Then virtually the only cause urged by McClure for an order to sell a portion of the certificate was to raise money to pay for locating and patenting the balance of it.   This was the cause assigned; the matter of costs and fees was only incidental to this.   Did the statute authorize the county court to order a sale for that purpose ?   We think clearly not.

But it is contended by appellants' counsel that the administrator's sale cannot be collaterally attacked; to which we cannot better reply than to refer to the language of Judge Bell in 27 Texas, 501.

But it is insisted by counsel for appellants that the appellees are estopped from questioning the legality of McClure's administration, because the land sued for was acquired through Andrews' administration on the same estate. We fail to see the potency of the argument.

Because Andrews was appointed administrator of Abner Lee, deceased, and procured the issuance of the certificate for the benefit of the heirs, settled all costs of his administration, and left no debts or claims unsettled against the estate, we are unable to see why the heirs are thereby estopped from denying the right or authority of McClure, either with or without sanction of a court, to interpose and sell the certificate, when there was no law authorizing him to do so. The facts in this case are different from those in the case of Giddings v. Steele, 28 Texas, 733, upon which counsel seem to rely. In that case the certificate had been condemned, and but for the action of the administrator, at a very heavy cost, the certificate would have been lost, and when established it was sold to pay debts.

It is also insisted that they are estopped from claiming the land in controversy because they have taken possession and held the two-thirds league in Collin county. To this we have only to reply: The whole of the certificate was theirs. It was " the evidence of their equitable right to acquire land." They had a right to the certificate, and all lands acquired by virtue of the same, and were authorized to take possession of the same wherever found located. McClure had no legal authority to sell the certificate, his vendee could acquire no title by the purchase, nor could he or any one else claim title to any portion of .

the land as a locative interest without a contract or authority from the heirs of Abner Lee, deceased, who were the true and real owners.   (28 Texas, 150; 28 Texas, 163; 28 Texas, 636.)

WALKER, J.—Abner Lee settled in Texas in 1834; he died intestate in 1835.   In 1838, his grandson, David Andrews, administered on his estate, apparently for no other purpose than that of proving up Lee's right to a certificate for a league and labor of land.   This he did, and it appears to be the only act of his administration.

Under the act of the Congress of the Republic, of February 5, 1840, Andrews was cited to settle his account, or show cause for additional time.   The citation does not appear to have been served.   It is claimed he left the country, and his letters were revoked.   In 1842 W. S. McClure was appointed administrator *de bonis non* of Lee's estate.

It appears that the land certificate was the only property of the estate at this time.   Lee at his death left one daughter, who subsequently died, leaving five children, some of whom are appellees; three of them, however, are represented by Jurnigan, who has purchased from them whatever interest they had in the land now in suit. McClure was a land locator, and probably applied for letters for the sole purpose of getting the certificate to locate.   Be this as it may, we do not think the matter has much to do with this case.

The Probate Court of Red River county ordered a sale of one-third of the certificate to raise funds to pay the costs and expenses of administration and the fees incident to procuring a patent for the other two-thirds of the certificate.

John B. Craig became the purchaser of one-third of the certificate sold under an order of court, and it is claimed that the court confirmed this sale, which is probably true,

but it cannot be denied that the record of the proceedings in the probate court is somewhat lame and imperfect.

Craig sold and conveyed his interest in the certificate to Wm. H. Moores. Moores dying, his heirs located on the land now in controversy in Tarrant county, which was patented to them in 1857. They went into possession of the land in 1858, made improvements, and the appellants are purchasers from them, claiming to be so in good faith, for a valuable consideration, and are in possession of the land.

McClure located the remaining two-thirds of the certificate on valuable land in Collin county, paying the expenses of surveying, locating and patenting, out of the proceeds of the sale made to Craig. And now the heirs of Lee, after appropriating the land so located in Collin county, and having acquiesced in McClure's acts without a murmur, and after a lapse of twenty-nine years, they and Jurnigan, in 1871, bring this action of trespass to try title, and have actually recovered a judgment for the land in the District Court. If there is any attempt at showing fraud on the part of McClure in any of his transactions connected with Abner Lee's estate it has totally failed, and it is pretty safe to infer, from all the facts in the case, that the heirs of Lee secured an early location of their grandfather's land certificate, and on valuable land, by means of McClure's administration.

Whether this object alone would have clearly justified the probate court in granting letters to McClure in 1842 may be somewhat doubtful; but upon a mere expression of this doubt this court could not be justified, at this very distant day, in declaring null and void and setting aside the proceedings of the probate court under which the appellants derive their title. They undoubtedly are purchasers in good faith for a valuable consideration, and as such must be protected.

Our attention is called to the case of Withers v. Patterson, 27 Texas, 495, 501. In this case Mr. Justice Bell holds, that if the case is one of a grant of administration when the court had no power to grant letters of administration, all proceedings of the court in the progress of such an administration are null and void, and may be shown to be so in any collateral proceeding in which they are relied on to support a claim of right.

This doctrine has been more than once approbated by the present bench, but not to help out a claim which must, upon every principle of equity, be regarded as stale, and where the doctrine of estoppel by matter *in pais* so evidently applies to the party who seeks to impeach the record, as it does in this case.

The grandchildren of Abner Lee quietly went upon the land located for them in Collin county, have reaped and enjoyed the fruits of McClure's sale, by which he raised the money to pay the expense of locating those lands, for twenty-nine years before bringing this suit.

But whilst we believe the reasons stated are abundantly sufficient to support the title of the appellants to the land in controversy, we by no means concede that the probate court was not fully authorized in granting letters of administration to McClure.

Probate courts have an equitable jurisdiction over minors and the estates of deceased persons, and they are not restricted in their equitable powers, unless by positive statute—which we think was not the case here—from doing any act for the protection of such estates and the estates of such minors.

Certainly it will not be contended that the act of Andrews in proving up the equitable right of Lee to the land in controversy was not a very necessary act, but we think it was equally necessary that some one should present the certificate and have it approved by the traveling board of

land commissioners; and further, to locate it early upon well selected lands, at as little expense to the heirs as necessity would permit; and all this seems to have been done and acquiesced in for a great lapse of time.

Touching the irregularities pointed out in the action of the probate court, which may have challenged a closer scrutiny of this court had the matter been brought before it a quarter of a century earlier, we have more than once laid down the doctrine that courts should liberally construe all statutes authorizing executors and administrators to sell land, and much indulgence has been given to apparent irregularities in judgments and decrees, in the entries of clerks, etc. (Lynch v. Baxter *et al.*, 4 Texas, 439.)

But there is a doctrine announced in Burdett v. Silsbee, 15 Texas, 608, wherein the court says the purchaser is not bound to look further back than the order of the court. And to support this doctrine the appellants cite 2 Peters, 168; 2 Wallace, 216; 2 Howard, 319.

In Burdett v. Silsbee the court uses forcible language to settle a point strongly analogous to that raised in this case, viz.: "It would be strange indeed if it could be shown at this time that the settlement of any considerable number of estates, administered in the early, or even in the later, years of the Republic, were conducted conformably to the laws in every particular. It was frequently difficult for those learned in the law to tell what law governed in certain cases, and how can it be otherwise than that many errors and irregularities were committed.

"And when it is considered that all the property of the country must, of necessity, have passed through these courts once every few years, it will be seen of what vast importance it is that these principles of the law which protect the title of the just and rightful possessor shall be maintained inviolate."

In Baker v. Coe, 20 Texas, 436, on the doctrine of presumptions, it is held that when the proceedings in the court were of long standing, and when the records were kept in an uncertain manner, even an order of sale would. be presumed.

In Alexander v. Maverick, 18 Texas, 195, a doctrine equally applicable to this case is held: It is to the effect that probate courts have jurisdiction in all cases over the estates of intestates, and any one acting upon the faith of the judicial acts of such courts will be protected.

The instruction of the court in this case to the jury, in directing them to return a verdict for the plaintiffs, was erroneous, and there was error in ruling out the records of the probate court, and for these reasons the cause will be reversed and remanded.

REVERSED AND REMANDED.